EMERGENCY MOTION - HEARING DATE TO BE SET BY THE COURT

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>VITTI PROPERTIES CORP.,<br><br>Debtor. | Chapter 11<br><br>Case No. 1-26-43254-ess (ESS) |

# PASQUALE SPORTELLI'S LIMITED INDIVIDUAL-CAPACITY PROTECTIVE MOTION TO EXTEND ANY APPLICABLE INVESTIGATION PERIOD UNDER E.D.N.Y. LBR 4001-5(e), OR ALTERNATIVELY FOR CLARIFICATION, AND FOR INTERIM RELIEF

(Related to ECF Nos. 38, 40, 46, 48, 50, 52, and 60)

## NOTICE OF MOTION

PLEASE TAKE NOTICE that Pasquale Sportelli ("Pasquale"), pro se solely in his individual capacity, moves for conditional extension through December 14, 2026 of any investigation-and-proceeding period under E.D.N.Y. Local Bankruptcy Rule ("LBR") 4001-5(e)(ii) applicable to him with respect to the Cash Collateral Stipulation and Order entered August 17, 2026 (ECF No. 40), or alternatively for clarification that no such period commenced upon entry of ECF No. 40, and for immediate interim preservation of any applicable period through November 30, 2026, or such other date as the Court orders.

PLEASE TAKE FURTHER NOTICE that Pasquale separately requests expedited scheduling and an order shortening time under LBR 9077-1(c) and Bankruptcy Rule 9006(d). He requests consideration with existing matters on November 12, 2026 at 10:30 a.m. only if the Court specifically authorizes this new motion for that date; alternatively, he seeks the earliest available hearing. ECF No. 60 did not set a hearing on this motion. Any objection and service deadlines are as the Court may direct. The filing of this motion does not itself toll any deadline.

## MOTION

### I. LIMITED RELIEF AND PROCEDURAL POSTURE

1. Pasquale seeks a narrow, alternative procedural ruling. If ECF No. 40 is the relevant final financing order, no unsecured-creditors committee has been appointed, and Pasquale is a qualifying nondebtor party in interest, he requests an extension through December 14, 2026 of the period, if any, to investigate and file a complaint or a motion seeking authority to commence litigation for the estate. The extension would not determine standing or ownership of any cause of action. In the alternative, he requests a ruling that entry of ECF No. 40 did not trigger a third-party investigation period applicable to him.

2. Because an arguable calculation reaches November 2, 2026, Pasquale asks for an immediate order conditionally preserving any such period through November 30, 2026 pending resolution, on the notice and opportunity to respond the Court deems appropriate. Pasquale does not presume that

submitting a motion causes automatic tolling or that an extension may be entered after expiration without further determination.

3. No substantive lien, claim-allowance, mortgage-authority, equitable subrogation, or estate claim is presented. Pasquale does not seek derivative standing, challenge CI Steinway LLC ("CI") in this motion, displace the debtor in possession, change ECF No. 40's cash-collateral or adequate-protection terms, suspend any sale or foreclosure process, or affect any single-asset-real-estate or stay-relief deadline. The Pasquale Sportelli 2018 Irrevocable Trust (the "2018 Trust") and all other persons or entities are not movants here.

## II. MATERIAL RECORD

4. Vitti Properties Corp. (the "Debtor") filed Chapter 11 on July 4, 2026 (ECF No. 1). As of November 2, 2026, the case docket showed numbered entries through ECF No. 73, entered October 29, 2026. The docket entries reviewed did not include an order appointing an official committee of unsecured creditors or expressly establishing an investigation-and-proceeding period under LBR 4001-5(e). This statement does not address docket activity after that review.

5. The Court entered ECF No. 40 on August 17, 2026 (Exhibit A). Its paragraph 4 contains the Debtor's admission that liens and security interests securing the asserted indebtedness are valid and duly perfected; the same paragraph reports CI's demand for $7,902,998.42 and further asserted charges. Paragraph 6 qualifies replacement liens as subject to defenses and further Court rulings, and effective only to the extent the prepetition liens have the stated attributes. Pasquale does not concede the truth, authority, or legal effect of paragraph 4.

6. The entered order lacks the investigation-and-proceeding provision described by LBR 4001-5(e). The materials reviewed in ECF Nos. 35-36 do not identify an explanation for its omission. Paragraphs 19-20 of ECF No. 40 reference and give stated precedence to a separate Settlement Agreement, whose full text Pasquale has not identified as separately docketed. These observations are presented only as cause to preserve procedural options, not as a merits attack.

7. Pasquale raised this local-rule issue individually before entry of ECF No. 40 (ECF No. 38), sought limited clarification by ECF No. 46 filed August 31, corrected an observation about the Court's strikeouts in ECF No. 50, and renewed a narrower reservation in ECF No. 52. The Debtor opposed ECF No. 46 (ECF No. 48; Exhibit B), but stated in paragraph 3 that the cash-collateral stipulation did not limit any legitimate rights Pasquale may have under applicable bankruptcy law concerning CI's liens. The statement is not a concession of his standing. This motion seeks a specific extension not requested in ECF No. 46, and is not a second Rule 9023 motion.

8. ECF No. 60 (Exhibit C) schedules a November 12, 2026 video hearing for the continued case-management conference and ECF No. 51. The October 2 docket event also adjourns ECF No. 46 to November 12. The Debtor's objection to CI's Claim No. 2 is separately set for that date (ECF Nos. 62-64); it concerns claim classification, valuation and charges and is not conceded to be a complete substitute for whatever nondebtor investigation rights the Local Rule may provide.

9. Pasquale filed individual contingent, unliquidated Proof of Claim No. 7-1 on August 30, 2026 and is an individual defendant in Queens County Index No. 706485/2026, in which Vitti is a named plaintiff. The Debtor disputes Pasquale's creditor and party-in-interest status, including in ECF No.

53. Section 1109(b) does not conclusively resolve that dispute, and the existence of a claim or state-court litigation alone does not confer authority to pursue estate claims. The requested order expressly reserves those questions.

## III. GOVERNING RULE AND CONDITIONAL DEADLINE

10. LBR 4001-5(e) provides that when a financing motion proposes an order containing a debtor-in-possession admission of the validity, enforceability, priority or amount of a prepetition claim or lien, either the proposed order must include a nondebtor investigation-and-proceeding procedure or the financing motion must explain its omission. Where no unsecured-creditors committee has been appointed, subdivision (e)(ii) describes at least 75 days from the entry of the final financing order for a party in interest other than the debtor to investigate the facts and file a complaint or a motion seeking authority to commence litigation as representative of the estate, subject to judicial adjustments for cause.

11. If August 17, 2026 is the operative entry date and the 75-day calculation applies, October 31, 2026 was day 75, a Saturday. Bankruptcy Rule 9006(a)(1)(C) would extend the end of that period to Monday, November 2, 2026. This is a protective computation only; Pasquale does not concede that ECF No. 40 commenced a period, that the period applies to him, or that a fixed 75-day period governs in the absence of required language.

12. Rule 9006(b)(1) generally permits extensions for cause requested before expiration. LBR 4001-5(e)(ii), however, speaks of a longer period "as the Court orders for cause shown before the expiration" of the period. The legal effect of a timely request without a same-day order may therefore be disputed. Pasquale seeks prompt interim action rather than assuming an automatic extension or a guaranteed later cure.

## IV. CAUSE, ALTERNATIVE CONSTRUCTION, AND SAFEGUARDS

13. Cause exists for a short conditional extension: ECF No. 40 omits the investigation provision; the omission's legal effect remains unresolved; Pasquale raised the issue before entry and through existing timely filings; the Court has already scheduled related issues for November 12; and the Debtor and CI now contest components of the asserted secured debt. A December 14 date provides a brief opportunity for the Court to resolve procedure without authorizing anyone to commence a new lawsuit.

14. Alternatively, the omission of a specified investigation provision and explanation supports the nonfrivolous interpretation that no third-party deadline started upon entry of ECF No. 40. A distinct argument exists that the default local-rule period applies notwithstanding omission. Pasquale requests a judicial ruling rather than treating either interpretation as settled.

15. The requested relief leaves intact all operative cash-collateral payments, escrow duties, replacement liens subject to their existing qualifications, debtor operations, § 362(d)(3), pending stay-relief and claim-allowance proceedings, and the separate rights of the 2018 Trust. CI, the Debtor and the United States Trustee remain able to oppose standing, procedural timeliness, cause, merits and any later authorization request. No judicial finding about the September 2022 corporate authority chain is sought.

16. If the Court cannot grant interim relief immediately, Pasquale respectfully asks for an expedited order setting the earliest practicable hearing and preserving for determination the effect, if any, of a request submitted on November 2, 2026. Such a scheduling order would not itself establish that the substantive deadline was extended.

**PRAYER FOR RELIEF**

WHEREFORE, Pasquale respectfully requests: (a) conditional interim protection through November 30, 2026; (b) after such notice and hearing as the Court directs, conditional extension of any qualifying period through December 14, 2026; (c) alternatively, clarification that ECF No. 40 did not start an LBR 4001-5(e)(ii) period applicable to him; (d) shortening of time and prompt scheduling on appropriate notice; and (e) relief strictly consistent with the foregoing limitations.

Dated: November 2, 2026

Respectfully submitted,

**s/ Pasquale Sportelli**
Pasquale Sportelli
Pro Se, solely in his individual capacity
1820 25th Road | Astoria, New York 11102
Telephone: (917) 670-5620 | Email: flexiphire@gmail.com

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF NEW YORK**

In re:

Chapter 11

VITTI PROPERTIES CORP.,

Case No. 1-26-43254-ess (ESS)

Debtor.

---

**DECLARATION OF PASQUALE SPORTELLI IN SUPPORT OF HIS INDIVIDUAL PROTECTIVE MOTION AND EXPEDITED REQUEST**

I, Pasquale Sportelli, declare under 28 U.S.C. § 1746 as follows:

1. I appear solely in my individual capacity. I do not represent Vitti Properties Corp., the bankruptcy estate, the 2018 Trust, any partnership, or any other person or entity. This declaration addresses my own actions and the contents of the identified public docket materials.

2. I filed the individual notice of appearance at ECF No. 7 and previously submitted ECF Nos. 38, 46, 50, and 52 concerning the cash-collateral order and the local-rule issue. I submitted individual Proof of Claim No. 7-1. My asserted claim remains contested and unliquidated.

3. ECF No. 40 was entered on August 17, 2026. My earlier filings requested procedural clarification and reservation of rights. I now request a specific conditional extension to December 14, 2026; I have not previously made an individual motion for this date-specific extension. I acknowledge ECF No. 46 was a related application for clarification.

4. As of November 2, 2026, I reviewed the bankruptcy docket and found numbered entries through ECF No. 73, entered October 29, 2026. I did not identify an order appointing an official unsecured-creditors committee or expressly establishing an investigation period under LBR 4001-5(e). I do not make any representation concerning docket entries after my review.

5. I understand that, only if a 75-day period began with ECF No. 40, one possible adjusted expiration date is today, November 2, 2026. I do not know that this Court has determined whether the period ever started or whether it applies to me.

6. ECF No. 60 schedules a November 12, 2026 video hearing for the continued case-management conference and my Rule 2004 motion. I understand that the Court has not yet added this new protective motion to that calendar or approved shortened notice for it.

7. I request interim protection and expedited scheduling to avoid losing the possibility of asserting a qualifying procedure before the Court decides ECF No. 46 or this motion. I do not ask the Court to grant derivative standing or to determine any lien or claim on its merits.

8. The separate 2018 Trust is represented by counsel. I am not asking for relief on behalf of the Trust, and no purported signature or authorization in this declaration extends to it. My motion and declaration reflect only my individual request.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 2, 2026.

**s/ Pasquale Sportelli**

Pasquale Sportelli, declarant

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF NEW YORK**

# EXHIBIT A

ECF No. 40 | Cash Collateral Stipulation and Order | Entered August 17, 2026

Court-filed ECF pages reproduced without alteration.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x

| | |
|---|---|
| In re:<br>VITTI PROPERTIES CORP.,<br><br>Debtor. | Chapter 11<br>Case No. 26-43254 (ESS) |

---------------------------------------------------------x

**STIPULATION AND ORDER AUTHORIZING CHAPTER 11 DEBTOR TO USE CASH COLLATERAL AND APPROVING ADEQUATE PROTECTION**

This Stipulation and Order (this "**Agreement**") is made as of July 27, 2026, by and between Vitti Properties Corp., the debtor and debtor-in-possession herein (the "**Debtor**"), and CI Steinway LLC (the "**Lender**"). The Debtor and the Lender are sometimes referred to herein individually as a "**Party**" and, together, the "**Parties**".

**RECITALS**

A. The Debtor is the fee owner of certain real property located at 25-12 Steinway Street, Astoria, New York 11103 (the "**Property**") which consists of Forty (40) apartments and Five (5) stores. The gross monthly rent roll totals $58,265.88.

B. On July 4, 2026 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") with this Court.

C. This is a "single asset real estate" case pursuant to §101(51B) of the Bankruptcy Code.

D. The Debtor continues to manage its property and affairs as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

E. No trustee, custodian or receiver was appointed, and no committee of creditors was formed, prior to the Petition Date except that lenders motion for the appointment of

a Receiver was granted pursuant to a State Court Order dated June 29, 2026 and filed on July 2, 2026 however the Receiver was not yet assigned prior to the Debtors instant filing .

F. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

G. Flavio Realty Corp. ("Flavio") is the owner of 25-02 Steinway Street, Vitti Properties Corp. ("Vitti" or "Debtor") is the owner of 25-12 Steinway Street and Dino Realty Corp. ("Dino") is the owner of 25-22 Steinway Street, Astoria. Each property consists of 40 apartments and 5 stores thereby totaling 120 apartments and 15 stores. Flavio and Dino may be referred to as Debtors' "Related Entities')

**THE LOAN**

H. On September 30, 2022, the Debtor signed a Promissory Note and First Mortgage and Security Agreement, an Assignment of Rents, Leases and Other Contract Rights (the "ALR"), the Guaranty of Recourse Obligations and Deficiency Guaranty executed by Angella Sportelli, each dated September 30, 2022 (collectively the "**Loan Documents**") in favor of Bethpage Federal Credit Union in the original principal amount of $6,000,000.00 which is secured by the Property The Loans Documents have since been assigned to CI Steinway LLC.

I. The Lender has alleged that the Debtor has defaulted under the Loan Documents, which defaults include but are not limited to the Debtors having failed to make the monthly payments of principal, interest and other amounts which became due under the Note on February 1, 2025 and each subsequent month thereafter (the "**Default**"). Due to the Defaults of Debtor and Debtors Related Entities, on May 2, 2025, Lender commenced a foreclosure action against Debtor and Debtors Related Entities in the Supreme Court, Queens County bearing Index No. 712740/2025 (the "State Court Foreclosure Action").

J. Pursuant to the Loan Documents including but not limited to the ALR which was recorded in the Registers Office on October 12, 2022 as CRFN 2022000387899, the Lender has asserted that the "Rents" currently being collected by the Debtor, together with all other proceeds of the Property, constitute the Lender's "cash collateral" (such asserted cash collateral, the "**Cash Collateral**") in which the Lender has a secured interest within the meaning of § 363(a) of the Bankruptcy Code.

K. The Debtor has immediate cash needs in order to run the day-to-day operations of its business, including without limitation, paying the monthly real estate taxes and monthly water and sewer charges and customary and necessary day-to-day expenses, and desires to continue to use the Rents for that purpose.

On the basis of and consistent with the foregoing findings and conclusions of law, it is hereby ~~**FOUND**~~**, ORDERED,** ~~**DETERMINED AND DECREED** by the Court, as follows:~~

1. Authorization to Use Cash Collateral. For the duration of this Agreement, the Debtor shall be entitled to use the Rents pursuant to the terms and conditions set forth in this Agreement. For the avoidance of doubt, the Debtor shall be entitled to use the Rents to pay any fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) (and any applicable interest thereon) and to pay the monthly expenses enumerated in Schedule A attached hereto.

2. Term. The term of this Agreement shall expire on the earlier to occur of (the "**Termination Date**"): (a) the closing of a sale of the Property, (b) January 31, 2027, (c) such later date upon which the Court fixes, or (d) a breach of this Agreement which is not timely cured (as more fully defined in Paragraph 16, below, an "**Event of Default**"). Absent an Event of Default, the Termination Date may be extended from time to time upon (a) the written agreement of the Debtor and the Lender, which parties shall be permitted to submit a Consent

Order to the Court, without further notice or hearing, extending the Termination Date or (b) upon further order of this Court.

3. Adequate Protection Payments. As and for an essential element of adequate protection, the Debtor shall make monthly deposits into an escrow account with the attorney for the Debtor of: (i) $12,785 which sum is earmarked and intended to cover the monthly real estate taxes and municipal charges that are accruing from the petition date (July 4, 2026) forward and (ii) $2,500 which sum is earmarked and intended to cover the monthly water and sewer charges that are accruing from the petition date (July 4, 2026) forward, it being intended that neither post-petition real estate taxes nor post-petition water and sewer charges due as of the petition date increase. For clarification, the unpaid real estate taxes as of the petition date was asserted to be $310,049 ("Pre-Petition Real Estate Tax Arrears") and the unpaid water and sewer charges as of the petition date was asserted to be $340,915 ("Pre-Petition Water & Sewer Arrears"). Debtor agrees that the Pre-Petition Real Estate Tax Arrears and the Pre-Petition Water & Sewer Arrears with respect to the Debtor shall not increase. As further adequate protection, and in addition to the aforementioned monthly deposits into escrow, the Debtor shall remit $5,000.00 to the Lender each month and which shall be applied by the Lender in accordance with the Loan Documents. The foregoing amounts shall be remitted on or before the 4th day of each month commencing August 4, 2026 (time being of the essence) and all sums received by escrow agent shall be utilized for the foregoing purpose regardless of any subsequent change in the status of the Debtor's bankruptcy case. If the amounts held in escrow is not sufficient to pay the full real estate tax bill due 1/1/2027 or the full new charges add to the water bill, then escrow agent shall make partial payments by utilizing all of the sums escrow agent received into escrow and escrow agent shall provide Lender with proof of payment. In the event Debtor fails to timely make these monthly payments, then escrow agent shall promptly notify Lender in writing. For

further clarification, the foregoing escrows shall be paid before any other monthly expenses of Debtor.

4. Acknowledgments. The Lender asserts that it is owed $7,902,998.42 as of July 6, 2026 (the "Indebtedness") and further asserts that interest continues to accrue thereon at the default rate of $2,912.04 per day, together with such other costs and fees, including legal fees, default interest and all as may be provided in the Loan Documents (the "**Indebtedness**") The Debtor admits that any and all liens and security interests securing the Indebtedness, including the Loan Documents are valid and duly perfected.

5. Post-Petition Liens. As partial adequate protection to the Lender for the Debtor's use of the Rents, and to protect against the diminution in value of the Lender's collateral and interest in the Property, to the extent of the use of Rents or diminution of value of the Property on a dollar-for-dollar basis and to the same extent of such diminution (the "**Adequate Protection Obligation**"), the Lender is hereby, to the same extent and validity, and in the same order of priority as its perfected secured interests in the Property and/or the Rents, and pursuant to §§ 361 and 363 of the Bankruptcy Code, granted valid, perfected, and enforceable liens (the "**Replacement Liens**") upon and security interests in any Rents and/or any and all other types of property that would have been subject to the Pre-Petition Liens that may come into existence after the Petition Date (the "**Post-Petition Collateral**"), but excluding any cause of action under §§ 544, 547, 548 or 550 of the Bankruptcy Code and the proceeds of any and all such actions (collectively, "**Avoidance Actions**"). The Replacement Liens granted herein shall have the same priority, extent and validity as the Pre-Petition Liens of the Lender with respect to the property used, sold or otherwise disposed of by the Debtor which secure the Loan, and such liens shall secure the Adequate Protection Obligation in an amount equal to the extent that any property securing the Indebtedness existing on the Petition Date diminishes in value.

6. Perfection of Adequate Protection Liens. The Replacement Liens in the Post-Petition Collateral granted to the Lender pursuant to Paragraph 5 above (i) are and shall be in addition to all security interests, liens and rights of set-off existing in favor of the Lender which exist on the Petition Date and (ii) are and shall be subject to any defenses and further rulings by the Court, valid, choate, perfected, enforceable, non-avoidable and effective as of the Petition Date, in each case to the same extent the Pre-Petition Liens are valid, choate, perfected, enforceable, non-avoidable and effective without any further action by the Debtor or the Lender and without the execution, filing or recordation of any financing statements, security agreements, vehicle lien applications, or other documents. All security interests and liens granted herein to the Lender be and hereby are deemed perfected, and no further notice, filing or other act shall be required to effect such perfection. If the Lender shall, in its sole discretion, choose to file financing statements or other documents or otherwise confirm perfection of such security interests or liens, the Lender is authorized to effectuate such filing and recordation.

7. Proceeds of Disposed Assets. In the event that the Property is sold, the proceeds of such sale shall be disbursed pursuant to the terms of a confirmed Plan of Liquidation of the Debtor.

8. Authorization. The Debtor's authorization to use the Rents in accordance with this Agreement is subject to (i) the Court's entry of this Agreement as an Order of the Court, (ii) the Debtor's continued faithful performance under the terms of this Agreement, and (iii) the absence of any continuing Event of Default hereunder.

9. Reservation of Rights. Provided Debtor makes monthly payments of the sums set forth in Schedule A and provided further that Debtor makes monthly Adequate Protection Payments to Lender and is not otherwise in default under this agreement, then nothing contained in this Agreement shall prejudice or limit the rights of the Debtor to hereafter seek to use of the

remainder of the Rents without the Lender's consent, or the rights of the Lender to seek, and the Debtor's rights to oppose at any future time, adequate protection pursuant to §§ 361, 362, 363 or 364 of the Bankruptcy Code, any relief from the automatic stay imposed by § 362 of the Bankruptcy Code or otherwise, conversion or dismissal of the case, or any relief available to any of Lender under the Bankruptcy Code or the Loan. If the Debtor fails to comply with any term and/or condition of this Agreement in any material respect, the required written consent of the Lender to the continued use by the Debtor of the Rents in accordance with the terms and conditions of this Agreement shall not constitute a waiver by the Lender or the Debtor of any of its rights, or prevent or prejudice the Debtor or the Lender from filing any proceedings or taking any action concerning the Debtor's use of the Rents.

10. Except as otherwise set forth below, nothing herein shall be deemed to constitute the Lender's consent to the charging or assessment, pursuant to §§ 105 or 506(c) of the Bankruptcy Code or otherwise, against its collateral of any expenses of administration of Debtor's chapter 11 case or any future proceeding which may result from such cases, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code and no such consent shall ever be implied from any other action, inaction or acquiescence by the Lender.

11. Subject to the terms of this Agreement, nothing contained in this Agreement shall be deemed to constitute a waiver of Lender's rights under the Bankruptcy Code or under the Loan Documents or the asserted Defaults in the State Court Foreclosure Action. Lender expressly reserves and preserves all rights and remedies a law, pursuant to the Loan Documents and in the State Court Foreclosure Action.

12. Nothing contained in this Agreement shall be deemed to constitute a waiver of Lender's rights to object to its treatment in any proposed chapter 11 plan.

13. The provisions of this Agreement do not constitute, and shall not be deemed to constitute an admission by the Lender that its interest in its collateral is adequately protected. No delay or omission to exercise any right, power or remedy available to Lender shall impair any such right, power or remedy, nor shall it be construed as a waiver of any of Lender's rights, powers and remedies.

14. Validity. If any or all of the provisions of this Agreement are hereafter reversed modified, vacated or stayed by subsequent order of this Court or by any other court, such reversal, modification, vacatur or stay shall not affect the validity of any obligations of the Debtor to the Lender that are or were incurred by the Debtor pursuant to this Agreement and that are or were incurred prior to the effective date of such reversal, modification, vacatur or stay, and shall not affect the validity and enforceability of any security interest, lien or priority authorized, created, affirmed or granted herein. Notwithstanding such reversal, modification, vacatur or stay, any obligations of the Debtor under this Agreement arising prior to the effective date of such reversal, modification, vacatur or stay shall be governed in all respects by the provisions of this Agreement and the Settlement Agreement.

15. Events of Default. The following shall constitute an Event of Default under this Agreement:

a. Conversion. The entry of an order by the Court converting the Case to a case under chapter 7 of the Bankruptcy Code;

b. Dismissal. The entry of an order by the Court dismissing the Case pursuant to §§ 1112(b) or 305 of the Bankruptcy Code or otherwise;

c. Non-Compliance. The Debtor's failure to comply with any other provision of this Agreement and or the Settlement Agreement including but not limited to the prompt monthly payment of the amounts provided in Schedule A herein;

d. Sale of Assets. The Debtor's consummation of the sale or transfer of Property outside of the ordinary course of its business without an order of this Court authorizing the same; and/or

e. Senior Liens. The post-petition creation of a lien, claim or other encumbrance upon the Property or the Rents senior in priority or *pari passu* with any of the Lender's Pre-Petition Liens.

f. Deviation from Budget. The failure of the Debtor to escrow the funds needed to pay the taxes and municipal assessments as the come due or to deviate from the budget by more than 10% without the express written consent of the Lender.

16. Termination of Debtor's Right to Use Cash Collateral. Upon the occurrence of an Event of Default which is not timely cured or the Termination Date, any rights granted to the Debtor hereunder to use the Rents shall be terminated.

17. Notice and Cure of Default. Upon the occurrence of an Event of Default, the Lender shall serve upon counsel to the Debtor (with a copy sent to the United States Trustee) a notice of default identifying the provision(s) of this with which the Debtor has failed to comply. The Debtor shall have ten (10) calendar days to cure such default (provided that said default is capable of being cured). Notwithstanding the foregoing, the Debtor's rights to cure any Event of Default are subject to any limitations set forth in this Agreement. If the Debtor disputes the Lender's determination that an Event of Default has occurred, the Debtor shall serve upon the Lender via fax or hand delivery a notice that the Debtor contests Lender's determination, identifying the grounds for the Debtor's challenge, and seeking an expedited hearing on such matter to be heard by the Court. The right to use cash collateral shall be suspended pending the hearing. If, after a hearing, the Court finds that the Debtor is in default hereof and such order and judgment is not stayed by the Court, any rights granted to the Debtor hereunder to use the Rents shall be terminated, expired and deemed vacated immediately as of the date of such finding or determination and Lender shall be entitled to submit a proposed Order to chambers via e-mail vacating the automatic stay contained in § 362(a) of the Bankruptcy Code as to Lender's interests in the Rents.

18. Binding Effect. Upon approval by the Court, the terms and provisions of this Agreement shall be binding upon the Debtor and its successors and assigns, as well as any Trustee appointed in the Case, in any superseding cases or in any cases related hereto, and shall inure to the benefit of the Lender until all obligations of the Debtor to the Lender under the Loan, the Settlement Agreement and this Agreement are satisfied in full.

19. Incorporation. The foregoing preamble and recitals to this Agreement, as well as, all of the terms of the Settlement Agreement, are incorporated herein by reference and made a material part as if same were set forth herein at length.

20. Conflict. In the event of any conflict between this Agreement and the Settlement Agreement, the terms of the Settlement Agreement shall supersede and control in all respects.

21. Notwithstanding the foregoing, the Replacement Liens shall be subject to and subordinate to (a) unpaid Chapter 11 professional fees and disbursements allowed by order of the Court up to the sum of $75,000.00, (b) fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930 (a)(6) and any fees payable to the clerk of the Court, (c) all closing costs including brokerage fees to the extent agreed upon by lender in connection with any broker retention, and (d) claims of administration of this case under Chapter 7 which are entitled to priority over chapter 11 administration expenses pursuant to 11 U.S.C. § 726(b) up to the sum of $5,000 (collectively, the "Carve-Out") . Any and all Post-Petition Liens granted hereby on accounts receivable, that are generated by the sale or other disposition of any tangible assets of the Debtor, shall attach to the same extent and with the same priority and validity that such liens had against such tangible assets on the later of the date of such disposition and the Petition Date.

22. The provisions of this Stipulation and any actions taken pursuant hereto shall survive entry of any order dismissing this case, converting the Debtor's Chapter 11 Case to

one under Chapter 7, or which may be entered confirming or consummating any plan of reorganization of the Debtor's estate, and the terms and provisions of this Stipulation as well as the priorities in payment, liens, and security interests granted pursuant to this Stipulation shall continue in this or any superseding cases under the Bankruptcy Code, and such priorities in payment, liens and security interests shall maintain their priority as provided by this Stipulation until all indebtedness due Lender is indefeasibly satisfied and discharged. Nothing in this Stipulation shall, however, impair the provisions of section 726(b) of the Bankruptcy Code.

23. The Debtor shall, at its sole expense, seek Bankruptcy Court approval of this Stipulation.

Dated: July 27, 2026

**VITTI PROPERTIES CORP.**
Debtor-In-Possession

By: *_/s/Angela Sportelli_*
Name: Angela Sportelli
Title: President

**CI STEINWAY LLC**
The Lender

By: *_/s/Steve Haskel_*
Name: Steve Haskel
Title: Managing Partner

***IT IS SO ORDERED***

**Dated: Brooklyn, New York**
**August 14, 2026**

Elizabeth S. Strong

Elizabeth S. Stong
United States Bankruptcy Judge

| Vitti ESTIMATED INCOME | Est. Monthly |
|---|---|
| **25-12 Steinway** | 48,000.00 |
| | |
| **Total Monthly Revenue** | **48,000.00** |
| | |
| **Expenses** | |
| Con Edison | 5,268 |
| Water Bill | 2,500 |
| Payroll | 2,680 |
| Payroll tax | 600 |
| Professional Fees | 3,000 |
| Repairs & Maintenance | 2,000 |
| Property Tax | 12,875 |
| Management Fee | 3,500 |
| Utilities | 3,000 |
| Deposits for Utilities | 5,000 |
| Additional Adequate Protection | 5,000 |
| **Operating Expenses** | **45,423** |
| **Net Operating Income (Rev-Op Exps)** | **2,577** |